**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| JAW Restaurant Management, LLC, doing business as The Counter, | ) ) ) | No. CV-06-2972-PHX-DGC |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| Fox Restaurant Concepts, LLC, doing business as The Counter. | ) ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiff JAW Restaurant Management LLC ("JAW") has filed a motion to dismiss Count VI of the counterclaim filed by Defendant Fox Restaurant Concepts, LLC ("Fox"). Dkt. #19. The Court has reviewed the memoranda submitted by the parties. Dkt. ##19, 27, 28. For reasons stated below, the Court will deny the motion.

**I.     Background.**

In April of 2006, Plaintiff demanded that Defendant cease and desist the use of "The Counter" in the name of any of its restaurants. Dkt. #19-2 at 3. The parties engaged in settlement discussions and, Defendant claims, reached a settlement agreement. Plaintiff disputes that an agreement was reached, but the Court must assume Defendant's claim to be true in ruling on this motion to dismiss. Dkt. #12 ¶ 92. Defendant claims the agreement arose from a series of emails exchanged between the parties in July and August of 2006. *Id.* ¶¶ 93-99. According to Defendant, the agreement included the following terms:

    (i)    Fox would not have to change the name or the signage or any uses of The Counter on-site at its existing store.

(ii) Fox could open up to three more stores in the Phoenix and Scottsdale area if it decided to expand.

(iii) The existing location of Fox's The Counter would create a basic template of what was acceptable under the agreement.

(iv) Fox agreed never to serve hamburgers at Fox's The Counter shop.

(v) Fox agreed not to seek listing for "The Counter" or "The Counter Restaurant" on the next phone and directory listings.

(vi) Fox agreed to add something after The Counter such as The Counter Eat Shop Splurge.

(vii) New marketing materials of Fox would reference The Counter as a one-of-a-kind concept or as something different or distinguishing in some manner from other ordinary restaurants in the Fox line.

(viii) Fox would not be required to remove or exclude The Counter name and logo from the consolidated entities' marketing materials.

(ix) The phase-out of nonconforming marketing materials would be completed by July 2007 at the latest.

Dkt. #12 ¶ 98. The agreement was not signed. In late 2006, Plaintiff demanded the addition of an anti-assignability clause, based on information that Defendant was trying to sell The Counter. *Id.* ¶¶ 102, 107. Defendant refused to modify the agreement, and Plaintiff brought suit on December 8, 2006. *Id.* ¶¶ 107-09; *see also* Dkt. #1. Defendant filed an answer and counterclaim on February 8, 2007. Dkt. #12. Count VI of the counterclaim seeks specific performance of the alleged agreement. *Id.* ¶¶ 168-74.

## II. Legal Standard.

A district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

**III.    Discussion.**

Plaintiff denies that it entered into an agreement with Defendant, but argues that even if it did, the use of terms such as "never" and "henceforth" bring the agreement within Arizona's statute of frauds. Dkt. #19-2 at 5-6. Under Arizona law, contracts that are "not to be performed within one year of the making thereof" must be in writing and signed by the party against whom enforcement of the contract is sought. A.R.S. § 44-101(5). Because the alleged agreement was not signed by either party, Plaintiff argues that the statute of frauds prevents Defendant from seeking its specific performance. Dkt. #19-2 at 5-6.

The statute of frauds "is narrowly construed." *Western Chance No. 2, Inc. v. KFC Corp.*, 957 F.2d 1538, 1541 (9th Cir. 1992) (citing John D. Calamari & Joseph M. Perillo, Contracts § 19-17 (3d ed. 1987)). "The mere possibility that performance can be completed within one year – even if not contemplated by the parties – is usually sufficient to remove the agreement from the statute of frauds." *Id*. (citing *Co-op Dairy, Inc. v. Dean*, 435 P.2d 470, 472 (Ariz. 1967); *Waugh v. Lennard*, 211 P.2d 806, 813-14 (Ariz. 1949) (oral employment contract not within the statute of frauds because employer could die within a year); *Healey v. Coury*, 783 P.2d 795, 799 (Ariz. App. 1989) (the statute requires impossibility of performance within a year)). The fact that performance may be completed in more than one year is immaterial. *Id*. (citing *Healey*, 783 P.2d at 799).

Plaintiff argues that the term "never" is "on [its] face perpetually executory" and by definition could not be performed within one year. Dkt. #28 at 2. While there is no Arizona precedent that directly addresses the issue, the law generally treats over-broad statements relating to duration of contracts as "indefinite terms." *See, e.g., C.R. Klewin, Inc. v. Flagship Properties, Inc.*, 600 A.2d 772, 779 (Conn. 1991) ("We therefore hold that an oral contract that does not say, in express terms, that performance is to have a specific duration beyond one year is, as a matter of law, the functional equivalent of a contract of indefinite duration for the purposes of the statute of frauds. Like a contract of indefinite duration, such a contract is enforceable because it is outside the proscriptive force of the statute regardless of

how long completion of performance will actually take.").[1]

Employment contracts that are "for life" or "until death" are the most common types of contracts having broad duration, and yet have been held to fall outside the statue of frauds. *See, e.g., Carnig v. Carr*, 46 N.E. 117 (Mass. 1897); *Silverman v. Bernot*, 239 S.E.2d 118, 121-23 (Va. 1977). This "same principle has been applied to promises in terms of unlimited duration made by or to a corporation when performance of the promise is, by nature, limited to the life of the corporation or the continuance of its business." 9 Williston on Contracts § 24:5 (4th ed.); *see also Richmond Union Pass. Ry. Co. v. Richmond, F. & P. R. Co.*, 32 S.E. 787 (Va. 1899) (oral contract between two companies that had no fixed time period within which it was to be performed was found outside the statute of frauds because a change of circumstances surrounding the parties might at any time have terminated the contract).

The agreement in this case falls outside the statute of frauds because it was not impossible for performance to be completed within one year. Plaintiff's corporation could have dissolved within a one-year period, and surely Defendant would not be expected to refrain from ever selling hamburgers or expanding to more than three restaurants if Plaintiff no longer existed. Defendant's corporation could also have dissolved within one year, or Defendant could have decided to change its name completely, thus fulfilling its obligations to refrain from the activities listed in the agreement. *See Carnig*, 46 N.E. 117 (An oral agreement of defendant to employ plaintiff so long as he had work to do in a certain occupation would have been completely performed within one year if defendant had ceased to carry on business within that time, and hence is not within the statute). Although the dissolution of the parties' corporations within a year may not have been contemplated at the time of the agreement, such contemplation is not required by Arizona law. *See Western Chance No. 2, Inc.*, 957 F.2d at 1541.

---

[1] Other provisions of the agreement could definitely be performed within one year. *See* Dkt. #12-4 at 5, 7 ("My client will agree to phase out nonconforming stuff within 240 days or 8 months . . ."; "[M]y client is agreeable on the phone directory listings to take immediate steps (within 10 business days of signing) to alert all phone directories . . .").

- 4 -

Plaintiff argues that "unless expressly limited to a term of less than one year, licenses under intellectual property and corresponding covenants not to sue have been universally held to fall within the Statute of Frauds." Dkt. #19-2 at 7 (citing *Commonwealth Film Processing, Inc. v. Courtaulds United States, Inc.*, 717 F. Supp. 1157, 1158 (W.D. Va 1989); *Schick Service, Inc. v. Jones*, 173 F.2d 969, 976 (9th Cir. 1949); *Sun Studs, Inc. v. Applied Theory Associates, Inc.*, 772 F.2d 1557, 1562-63 (Fed. Cir. 1985)). *Commonwealth Film Processing* stated that license agreements are subject to the statute of frauds if they "cannot be fully performed within one year," 717 F.Supp. at 1158, but the Court has already explained why the agreement in this case could be performed within a year. *Sun Studs* interpreted a different State's statute of frauds that rendered an oral contract void if "by its terms it is not to be performed within a year," and relied on precedent that applied the statute of frauds to oral agreements that granted a license on a patent whose remaining term was more than one year. 772 F.2d at 1562-63 (citing *Schick*). *Sun Studs* is inapplicable because Arizona's statute of frauds focuses on whether performance within one year is possible even if the contractual terms do not call for performance within one year, and because this case does not involve a license on a trademark whose life, like a patent's, is some definite term greater than one year.

Plaintiff makes a variety of arguments regarding why the agreement does not fall within any of the exceptions to the statute of frauds. Dkt. #19-2 at 7-11. Because the Court concludes that the statute of frauds does not govern the alleged agreement, the Court need not address the statute's exceptions.

**IT IS ORDERED** that Plaintiff's motion to dismiss (Dkt. #19) is **denied**.

DATED this 26th day of April, 2007.

_David G. Campbell_
David G. Campbell
United States District Judge

- 5 -